Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
JONATHAN SAPAN

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SAPAN,<br><br>            Plaintiff,<br>      vs.<br><br>SOLARMAX TECHNOLOGY, INC., a California Corporation; and DAVID HSU, an individual,<br><br>            Defendants. | Case No.: **'15CV0897 MMA MDD**<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

        COMES NOW Plaintiff JONATHAN SAPAN (hereinafter referred to as

"Plaintiff") who alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times herein mentioned was, a resident of the County of San Diego, State of California

2. Defendant Solarmax Technology, Inc. ("Solar Max") is, and at all times herein mentioned was, a California Corporation, doing business in the County of San Diego, State of California.

3. Defendant David Hsu is, and at all times herein mentioned was, an individual doing business in the County of San Diego, State of California.

4. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

/ / /

## FACTUAL SUMMARY

6.  JONATHA N SAPAN received three (3) prerecorded calls and seven (7) live calls to his residential phone line (858-324-9001) from Defendants wherein they tried to pitch solar instillation services on the following dates and times and using the following Caller ID ("CID") number and name:

- July 1, 2014 at 4:00 pm, CID 909-235-7753
- July 1, 2014 at 4:05 pm, CID 312-208-3149
- July 17, 2014 at 5:36 pm, CID 909-235-7753
- July 17, 2014 at 5:40 pm, CID 312-208-3149
- August 4, 2014 at 4:38 pm, CID 619-607-3082
- August 4, 2014 at 4:45pm, CID 312-208-3149
- August 8, 2014 at 10:39 am, CID 619-607-3082 "SOLARMAX"
- August 15, 2014 at 12:31 pm, CID 323-429-4355
- September 5, 2014 at 4:05 pm, CID 858-324-6070
- September 15, 2014 at 3:31 pm, CID 858-324-6070

7.  Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from August 17, 2013 to the present.

8.  While each of the calls complained of above used a Caller ID number, only one (1) of the calls transmitted accurate Caller ID name information as required by law.  47 C.F.R. § 64.1601(e).

9.  Mr. Sapan alleges on information and belief that Defendants also transmitted the other calls, which went unanswered, to pitch the same debt consultancy services.

10. None of the prerecorded calls complained of were introduced by a live natural person as required by the California Consumer Legal Remedies Act.

### FIRST SET OF ILLEGAL CALLS

11. During the first call on July 1, 2014 at 4:00 pm, Defendants called Mr. Sapan's home phone number using CID number 909-235-7753.

12. The call used an unidentified robotic voice that instructed Mr. Sapan to leave his name and number in order to receive more information on purchasing solar instillation services.

13. In order to determine who was calling him with a prerecorded messages that did not identify the caller, Mr. Sapan gave a false name ("Mr. Thomas") and left specific instructions in the message that whoever it was could only call him at a separate number (619-333-0142) which Mr. Sapan uses to investigate shady callers who will not identify themselves.

14. Only five minutes after this prerecorded call, on July 1, 2014 at 4:05 pm, "Alex" called Mr. Sapan from a second CID number, 312- 208-3149.

15. "Alex" proceeded to pitch solar instillation services to Mr. Sapan.

16. To determine who was behind the illegal call, Mr. Sapan feigned interest by inquiring about website information and "Alex provided Mr. Sapan with a false website name, solar-complete.com, which does not exist.

17. On July 17, 2014 at 5:36 pm, Defendants called Mr. Sapan from CID number 909-235-7753, which is the same CID number listed during the first call.

18. This call used the exact same prerecorded message as the first call.

19. The robotic voice again instructed Mr. Sapan to leave his name and number to receive more information on purchasing solar instillation services.

20. Mr. Sapan again provided his false name and told them to call back at his separate investigation number (619-333-0142) to find out which organization was behind the illegal calls.

21. And just like the first time, Defendants called Mr. Sapan from CID number 312-208-3149 only five minutes after he left a message with their prerecorded calling machine, at July 17, 2014 at 5:40 pm.

22. Similar to the previous live call, an unnamed individual attempted to pitch Mr. Sapan solar energy products, and schedule an in person appointment but would not divulge their company name.

23. On August 4, 2014 at 4:38 pm, Defendants called Mr. Sapan from CID number 619-607-3082.

24. This call used a different prerecorded message from the first and second prerecorded calls.

25. The robotic voice again inquired about interest in solar systems but this time asked to "press 1" if interested.

26. Still wanting to find out who was making these illegal calls, Mr. Sapan pressed 1 and was put to a voicemail message that asked him to leave his name and number.

27. And again, Mr. Sapan provided the fictitious name, "Mr. Thomas", and told them to call him back only at 619-333-0142.

28. Just like the first two times, Defendants called back to Mr. Sapan's residential number—not the investigative number he gave them—only moments later, on August 4, 2014 at 4:45 pm,

29. Just like the first two times, someone saying she was "Danielle" of "Solar Energy Choice" tried to pitch Mr. Sapan on a solar energy system.

30. Just like the first two times, the live call following the prerecorded call used the CID number 312-208-3149.

31. Growing weary of this pattern, Mr. Sapan feigned interest using the "Mr. Thomas" name but insisted that they could only speak to him at his separate number 619-333-0142.

**LEGAL CALLS TO MR. SAPAN'S INVESTIGATION LINE**
[Establishing Defendants As The Caller]

32. The next day, on August 5, 2014 at 11:45 am from CID number 951-300-0751, "Rose" from "Solarmax" called Mr. Sapan and left a voice message.

33. This call marks the first of ten (10) calls transmitted to Mr. Sapan's

separate investigation line 619-333-0142.

34. These ten calls were legitimate callbacks to the investigative number Mr. Sapan had given Defendants permission to call and are not claimed as TCPA violations herein, unlike the foregoing violative calls.

35. In this first call to Mr. Sapan's separate investigation line 619-333-0142, "Rose" left a voicemail for Mr. Thomas and pitched solar energy products on behalf of Solarmax.

36. Mr. Sapan performed a Google search of the CID number from this call from "Rose", 951-300-0751, immediately after receiving the voicemail.

37. At that time this number was listed on Defendants' website solarmaxtech.com, but appears to have been since taken off that site.

38. Regarding the ten (10) legal callbacks to the investigation line, two (2) CID numbers 951-300-0751 and 951-300-0788 were used to call Mr. Sapan.

39. Mr. Sapan performed a Google search of the CID number 951-300-0788 immediately after receiving the first call from this number on August 11, 2014 at 9:38 am.

40. At that time this number was listed on Defendants' website solarmaxtech.com, but appears to have been since taken off that site.

41. At the time of drafting this Complaint (4/20/15), a Google search of the number 951-300-0788 still gives "Solarmax Technology, Inc.

- 7 -

Complaint

www.solarmaxtech.com 3080 12th St. Riverside, CA 92507" as the second result.

42. And the third result is a link to an Angie's List advertisement for SolarMax Technology giving the same Riverside address.

43. A screenshot taken by Christopher J. Reichman [SBN250485] of said Google search on April 20, 2014 is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

44. Furthermore, during settlement discussions between Mr. Sapan and Craig Swart, an employee of Solar Max, Mr. Swart's signature block lists 951-300-0788 as his contact phone number.

45. A redacted version of the September 5, 2014 letter from Craig Swart showing only the signature block is attached hereto as Exhibit 2 and incorporated herein as if set forth verbatim.

46. These ten calls to Mr. Sapan's alternate investigative number prove that Defendants were behind the prior illegal calls to his residential line, as well as the subsequent illegal calls to his residential line detailed below.

## SECOND SET OF ILLEGAL CALLS

47. On August 8, at 10:39 am, Defendants called Mr. Sapan's residential line (again, 858-324-9001) from CID number 619-607-3082.

48. The CID number 619-607-3082 is the same used during the fifth illegal call to Mr. Sapan on August 4, 2014 at 4:38 pm, as detailed above.

Complaint

49. Unlike the previous use of this CID number, however, this call on August 8th also transmitted a CID name of "SOLARMAX".

50. The person calling gave no name or company name and just attempted to pitch Mr. Sapan solar energy products.

51. Mr. Sapan expressed no interest in any solar energy products, since he had now discovered Defendants' identity

52. On August 15, 2015 at 12:31 pm, Defendants called Mr. Sapan's residential line from a fourth CID number, 323-429-4355, wherein they attempt to pitch solar energy products to him.

53. On September 5, 2014 at 4:05 pm, Defendants called Mr. Sapan's residential line from a fifth CID number, 858-324-6070, wherein they attempted to pitch solar energy products to him.

54. On September 15, 2014 at 3:31 pm, "Danielle" of "Solar Energy Choice" called Mr. Sapan's residential line again this time using the CID number, 858-324-6070, and again attempted to pitch solar energy products to him.

55. The Bloomberg Business Page lists Defendant David Hsu as Chief Executive Officer of Solar Max Technology, Inc.

56. The publication Business Wire TM ran an article on August 20, 2012 wherein it detailed SolarMax Technology moving offices to its current Riverside address which quoted David Hsu, who self identified as Chief Executive Officer of

- 9 -
Complaint

Solar Max Technology, Inc.:

> "SolarMax Technology Inc. is moving its corporate headquarters from the City of Industry to the Emerald City of Riverside! SolarMax Tech. is set to occupy a 165,000 square-foot office and warehouse building at 3080 12th Street in Riverside. The move will bring and create directly and indirectly 1,600 jobs. 'It was the next step in our growth,' said David Hsu, SolarMax Technology CEO. 'We were looking at our expansion plans and realized that going to Riverside made sense because not only is it sunny most of the year, but the city is focused on green technology and development and the area is growing.'" [available at http://www.businesswire.com/news/home/20120820005374/en/SolarMax-Technology-Moves-Headquarters-Riverside-California#.VTWaTvBGRbQ]

57.    The City of Riverside Office of Economic Development also has a posted June 23, 2014 Business Spotlight web blog entry detailing SolarMax Technology again identifying David Hsu as the Chief Executive Officer:

> "Chinese Ambassador Consul General Liu Jian recently came for a visit to SolarMax, which included a warm welcome to the City of Riverside by Mayor Rusty Bailey, members of his staff and the executive staff of SolarMax including CEO David Hsu and CFO Ching Liu. The group was then given a tour of SolarMax's newly renovated historic headquarters facility guided by CEO David Hsu. The purpose of the visit was to see firsthand how businesses that have relocated to the City of Riverside have prospered." [available at http://riversideoed.com/news-media/article/business-spotlight-solarmax-technology-inc].

58.    SolarMax lists its size as "201-500 employees" on its LinkedIn profile, though only 80 employees are linked. [available at https://www.linkedin.com/company/solarmax-technology].

59.    None of SolarMax Technology's linked employees on LinkedIn have

a title indicating officer-level managerial duties in marketing or sales sufficient to give them apparent authority to run a telemarketing campaign or hire an outside group to conduct one for SolarMax Technology.

60. None of the public announcements like those quoted above refer to a person having a title indicating officer-level managerial duties in marketing or sales sufficient to give them apparent authority to run a telemarketing campaign or hire an outside group to conduct one for SolarMax Technology.

61. David Hsu, as Chief Executive Officer, is the only publicly named officer of SolarMax Technology having a title indicating officer-level managerial duties in marketing or sales sufficient to give them apparent authority to run a telemarketing campaign or hire an outside group to conduct one.

62. Plaintiff alleges on information and belief that Defendant David Hsu made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

63. Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and

consequent health effects of stress these illegal intrusions have caused.

# FIRST CAUSE OF ACTION
[Violation of Telephone Consumer Protection Act of 1991
For Three (3) Prerecorded Telesolicitation Calls]

64. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

65. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

66. Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

67. Defendants have called Plaintiff's residential telephone line, using an artificial or prerecorded voice to deliver a message, without Plaintiff's express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's

residential telephone line.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

68.  Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b) (1) (B). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
[Violation of Telephone Consumer Protection Act of 1991
For All Ten (10) Telesolicitation Calls]

69.  Plaintiff realleges all paragraphs above and incorporates them herein by reference.

70.  Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

71.  Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her

telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

72. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

73. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

74. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## THIRD CAUSE OF ACTION
[Violation(s) of California Civil Code § 1770 (a) (22) (A)
For Three (3) Prerecorded Telesolicitation Calls]

75.  Plaintiff realleges all paragraphs above and incorporates them herein by reference.

76.  California Civil Code § 1770 (a) (22) (A) requires that all recorded messages disseminated within the state be introduced by a live, natural voice giving the name of the entity calling, the name of the entity being represented, an address or phone number for that entity, and asking permission to play the recording.  Defendant's illegal prerecorded telemarketing calls to Plaintiff failed to comply with this requirement.

77.  As a proximate result of defendants' violation of Civil Code section 1770, plaintiff has suffered and continues to suffer damages in an amount not yet ascertained, to be proven at trial.

78.  Civil Code section 1780 (a) (2) provides for an injunction against future conduct in violation of Civil Code section 1770.

79.  Civil Code section 1780 (a) (4) provides for an award of punitive damages for violations of Civil Code section 1770.

80.  Civil Code section 1780 (d) provides for an award of attorneys fees for plaintiffs harmed by California Civil Code §1770 (a) (22) (A) violations.

- 15 -
Complaint

## FOURTH CAUSE OF ACTION
[Trespass to Chattel – All Ten (10) Calls]

81. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

82. The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

83. At no time did Plaintiff consent to this trespass.

84. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 4% of his monthly phone bills in July and August of 2014 since Defendants calls constituted 4% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

85. In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex, injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## FIFTH CAUSE OF ACTION
[Engaging in Unfair Business Practices – All Ten (10) Calls]

86. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

87. Because these telephone calls violate federal statutes, they are

unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

88. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 4% of his monthly phone bills in July and August of 2014 since Defendants calls constituted 4% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

89. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:
1. For an award of $500.00 for each violation of 47 U.S.C. §227;
2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:
3. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c)(2);
4. For an award of $1,500.00 for each such violation found to have been willful;

/ / /
/ / /

On the THIRD CAUSE OF ACTION:

5. For compensatory damages according to proof;
6. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in activity in violation of California Civil Code §1770 (a) (22) (A);
7. For punitive damages;
8. For attorney's fees;

On the FOURTH CAUSE OF ACTION:

9. For compensatory damages according to proof;
10. For punitive damages;

On the FIFTH CAUSE OF ACTION:

11. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

12. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.
13. For costs of suit herein incurred; and
14. For such further relief as the Court deems proper.

DATED: April 20, 2015                    **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
JONATHAN SAPAN

Complaint